May it please the Court and Counsel, Ron Hostetter, Enterprise, Oregon. Appearing to the Plaintiff, David Eugene Nelson. Mr. Nelson was released from Montana State Penitentiary on October 30th of 2000, which was a year, more than a year, after he should have been released, had his release time been properly calculated. He had, in June of that year, began a series of grievances filed pointing out what he was correct on, and the defendants, we believe, the evidence shows, acted with deliberate indifference to that request. That's pointed out that, and at the district court level, the case was dismissed on summary judgment. So is there a genuine issue of fact on this, on that question? It's not a case where someone got a flat five-year sentence and didn't get released until the sixth year of incarceration, is it? No, it is not. I mean, there are a lot of wrinkles and twists in this, not the least of which is your client escaped from custody a couple of times. Absolutely, yes. And there were some Supreme Court, State Supreme Court decisions and legislative actions that affected sentence. So this wasn't just some hard-nosed prison official saying, I think Nelson ought to serve an extra year. No. No, it was not. That's why I used the term deliberate indifference. At what point are you claiming the deliberate indifference case? Well, two points. It can't be until after he got the Supreme Court ruling, right? Excuse me? It certainly can't be until after he got the Supreme Court ruling. Well, that's my main point is after the Supreme Court ruling. That is certainly my main point. Was there a woman who wrote that, a defendant in this case? No, but the point is, excuse me. Well, I think we need to sort that out first because she's not a defendant. Right. And we don't have to run through the qualified or saussure analysis as to her. The question is, who is a defendant here that might have some liability? The person to whom that was written, Janet Cox, is a defendant. And the question arises, why did she not read it? She had been the one to whom the grievances had been filed months earlier on this same point, knew there was It's her job. She seemed to be sort of a clerk, I mean, a registrar or something. Yes, she's the one to whom all the inmates were always directed. But in a more than ministerial clerical capacity? Yes, absolutely. She decides the grievances? She decides them, yes. And she – but not very qualified to do so, admittedly. Not at all very qualified. However, a person in that position needs to take these matters more seriously since she is making those decisions. She has the power to order a release? She has the power to – well, she was the one to whom the warden looked and made the decision based on her decision. I'm not sure that if the release was made that she would sign the release. Probably the warden would. But as soon as she received notice, do you have any doubt that she moved through the process fairly expeditiously? Well, as to September – well, the decision came down to September 7th, yes. I think she should have read it. October 13, after she received the email, she then moved through the process. It looked fairly expeditiously, and all the events occurred that would normally occur on release. I guess my question is if – do you see any liability for her if her kickoff date, in effect, were October 13th? Oh, I see. Her notice by the email. If her kickoff date were October 13th to then begin calculations and have him released by October 30th, I think it would have been appropriate. Okay. So then that now leaves us with the timeframe from the timing of the Supreme Court decision to October 13th. When no one read it. When no one read it. So that's the period you want us to focus on. I would, yes. And then finally, I would – I'd like to point out that in the – just going back to 1994, the district court judge had – excuse me – in the – in that decision had – What is there – I'm sorry to interrupt. Go ahead. I may as well get to the courts. What is there in your record about Ms. Cox's responsibilities, authority, power, et cetera? It's in the record in a deposition of Ms. Cox where she indeed says how those – all of those requests come to her and she makes the decision. And then it's in the record that she really doesn't – is not – she's a clerk-type person. She doesn't – I'm not sure she would know what that Supreme Court decision meant if she'd have read it. And how could she act with deliberate indifference? Well, because she should have read it. A person in that position should read it. She just told us that you're not sure that she would understand it even if she did read it. She's not a lawyer. Right. That's correct. And it's not her job to read Montana Supreme Court slip opinions and anticipate which, if any, of the prisoners in that institution might be subject to early release. Well, except understand, this is a decision right on this defendant. I mean, this is not like she needed to interpret anything. She didn't need to read a case coming down and think, hmm, who does this apply to? This was a decision that was written that saying this defendant was – his time was miscalculated. I mean, that doesn't – she could understand that. I don't contend she couldn't understand that as this defendant. Thank you. Okay. We have a few minutes for rebuttal, which you can use if you like. Thank you very much for your argument. Counsel? Ms. Baker? Good morning. Good morning. May it please the Court. Montana prison officials are protected by qualified immunity in this case because they did not violate David Nelson's clearly established rights and their actions were objectively reasonable. The first step in this court's – After they got the Supreme Court opinion, they certainly knew he was supposed to be released, and they took a while. If you took a look at them collectively, the question is what happens if they start breaking it down. But it did take two months for him to get out of prison after he was already out of prison. And I think your question, Your Honor, goes to the first inquiry that the Court needs to look at, which is whether the facts would show a constitutional violation. Deliberate indifference requires a sufficiently culpable state of mind, which the undisputed facts on the record show was possessed by none of the defendants before this Court. I think I'll skip over the part up to the point when the writ was issued, because I think we can all agree that certainly there was no deliberate indifference prior to that time. At that time, September 7th was when the Supreme Court issued its order. That marked the date as a district court found when the prison would have had fair warning that Mr. Nelson's sentences should have run concurrently. When Janet Cox first learned of that order, the record shows, was when she received the e-mail or got the order. But I guess the question is whether that was deliberately indifferent, i.e., if she is the – I need to know more about what the record shows about her responsibilities. But if her responsibility was to monitor the release dates of prisoners and there's a State Supreme Court opinion, does the record show whether she physically had the State Supreme Court opinion? Yes, Your Honor. The record shows that Ms. Cox is the supervisor of the Records Department, which has seven employees and is responsible for the records of 2,800 inmates. As this Court well knows, inmates frequently file petitions contesting the nature or conditions or term of their confinement. And Ms. Cox, when the inmate comes in, the Records Department calculates their discharge date, notifies the inmate, this is your discharge date, and they don't do anything else with that inmate unless something comes to their attention that affects that inmate's discharge date. Janet Cox relies on counsel for the Department to notify her of court orders that affect the inmates. And does the record reflect that? That that's the – there was a State Supreme Court judgment? Yes, that's in her – in her deposition. So the overall problem here is that they sued the wrong person? Your Honor, I think that's exactly it. There's no question from this record that Janet Cox did exactly what she should have done. As soon as she knew about the Court's order, she pulled the file, she ran the calculations, and within two days had them back to counsel, who then petitioned the Court to release David Nelson, and he was released within days of that order. It's Mr. Nelson's burden of proof to show that the law was clearly established, and we submit he cannot meet that burden in this case, first of all, clearly because until – Well, the problem isn't really that it wasn't clearly established. The problem seems to be he sued the wrong person. Presumably, I mean, why isn't it deliberately indifferent for whoever is responsible or the fact that somebody should be responsible for knowing when a court has ordered somebody to be released and ordered the State of Idaho to release somebody? There has to be – if there is no system for processing those determinations, why isn't that deliberately indifferent to people's rights? Your Honor, I think – I appreciate the Court's question, and I think that on this record, it was a little bit confusing because the Supreme Court remanded the case to the sentencing court. There's no order that clearly establishes a right to immediate release. It goes back to the sentencing court. The lawyers for the department wait for something to happen from the sentencing court. When that doesn't come – Have you ever had the courts just do things by themselves? Was there anybody showing up? Well, I think typically a court – the court – the sentencing court would set a hearing or direct a response. Have anybody making a motion for him? Not necessarily, but granted. I think that the record at most shows a factual issue as to the negligence of counsel for the department. That's not enough to defeat qualified immunity in this case. First of all, negligence isn't sufficient. And this Court has said it's not enough. Counsel for the department is not a party, correct? Exactly. So let's – It's pretty clear that as of the date the Supreme Court issues its order, we now have the law clearly established, correct, that he's entitled for release. He's entitled to have his sentence recalculated. So the question is – Recalculated or released? Pardon me? Recalculated or released? The Supreme Court's order said that it was remanded to the district court for recalculation of his sentence and also determination of good time credit, which was another case that had just come down from the court that the prison was dealing with at the same time. So there were two issues. Is he representing himself at this point in terms of his sentence calculation, or is he – then is Mr. Nelson, is he represented by counsel? He was pro se with the assistance of an inmate law clerk, I believe. The point being, first of all, that negligence isn't enough. You – this Court has said there must be – that the defendant who objectively should have recognized the danger but failed to do so isn't liable under 1983. But second, the Court's inquiry really does need to focus on the parties before it. And as I've said already, Janet Cox did exactly what she should have done. And I think in this case, the actions of Diana Leibinger Cook, the attorney for the Department of Corrections, really aren't before the Court. And finally, the actions of Mr. Nelson himself are relevant in determining what's objectively reasonable. He recognized that the sentencing court needed to take action. He petitioned the court, albeit the wrong court, but he petitioned the district court for a hearing on the Supreme Court's order. And he asked for a hearing date of October 26th. He was released within four days of the date that he requested for a hearing. When did he petition? What was the date of his petition? The district court's order said his petition was mailed on the 18th of October. It was dated, his date was the 13th of October that he wrote his petition out to the district court. But presumably, that was because nothing happened before that. Pardon me? Presumably, that's because nothing happened before that. It could very well be. But I think that the point is that he asked the court for an October 26th hearing date, and he was released prior to or right after that, that date had passed. In conclusion, in this case, the essential historical facts concerning what these defendants knew and what actions they took are not in dispute. And qualified immunity was appropriately decided on summary judgment by the district court. This court has noted several times that the law does not hold an officer accountable for information that only the 2020 vision of hindsight can provide. Because there is something disturbing about it. It's not 2020 hindsight. There was an order issued to the State of Idaho to do something about somebody who was apparently erroneously in prison. And it was – there seemed to be no system for handling that. There was – as far as one could tell, the counsel sort of fell upon this about a month after the order was issued. There seemed to be no processing system. Your Honor, there is, and indeed, I can understand the Court's concerns just looking at the bare language of that e-mail, which is why e-mail is something we try to use cautiously. And I think that in answer to the Court's concern, this was all happening at a time where the Supreme Court of Montana had issued several decisions in a matter of months affecting how inmates' release dates needed to be calculated. Not only – One reason why somebody should have been reading them. Right. They shouldn't be reading them. And the defendant – well, not the defendant. The plaintiff has alleged State law negligence claims in his complaint, which were dismissed without prejudice. And he can certainly still – Why is it negligence if, knowing that the State of Montana is issuing orders to saying that the State has been miscalculating release dates, there – someone just doesn't read them? Isn't that deliberately indifferent to the question of whether people are being held in prison wrongfully? Your Honor, my point is that even if there's a factual question as to counsel's deliberate indifference, the defendants in this case are saying – Well, I understand that. But you seem to be saying the whole thing is negligent, and I'm not sure that's  Well, I think there could be factual issues on that. But as I – as you've noted, she's not a party. And I think the bottom line is there's no – You don't want to make any admissions in that. This could go back to the State court. Is that correct? Yeah. And we're – we're certainly not admitting deliberate indifference. But what I'm saying is even if you find a factual issue on that point, these defendants are still entitled to qualified immunity. Thank you for your argument. Mr. Hostetter, rebuttal. At page 56 of the excerpt of the record is – in the record it shows that Janet Cox is the person delegated with the responsibility to determine David Nelson's discharge date and answer any of his grievance requests pertaining to the discharge date. And so it points out through her deposition, 56 in the pages that follow, why she is the one actually with the ultimate responsibility. However, that is to either grant or deny release. So that's contrary to what I said a little earlier. But I would point out that there's more defendants in this than just Janet Cox. We went right up the line to the warden in the series of supervision. And I would argue that each one of those defendants had a responsibility. Who are they? I see who they are, but what are their jobs, just briefly? Mike Mahoney is the warden. I'm sorry? Warden. Warden. Okay. Leonard – I'm sorry. I think Leonard Mihelich is the assistant warden, and then it goes down from there, and I don't know what the other titles are. The record does show it, but I don't know what they are. We don't have argument in the brief on individual culpability for these people, do we? No, you do not. Okay. Thank you very much for your argument. Thank both sides for their argument. The case just argued will be submitted for decision.
judges: Hawkins, McKeown, Berzon